1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

10

JOHN KELLY REYNOLDS,

11                  Plaintiff,

12        v.

13

STATE OF WASHINGTON,
14 DEPARTMENT OF CORRECTIONS, et
al.,

15                  Defendants.

16

CASE NO. 3:16-CV-05126-RBL-JRC

REPORT AND RECOMMENDATION

NOTED:  August 12, 2016

17        The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States

18 Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), and local

19 Magistrate Judge Rules MJR1, MJR3 and MJR4.

20        Currently before the Court is defendants' motion for summary judgment. Dkt. 14.  The

21 motion has been fully briefed with supporting declarations.  Dkts. 14-19, 22-26. Plaintiff claims

22 violation of the Eighth and Fourteenth Amendments through 42 U.S.C. § 1983, as well as claims

23 of negligence and medical malpractice.

24

Plaintiff's claims arise out of his medical treatment and/or lack of treatment during his incarceration at a Washington state correctional facility and are based on an injury he sustained prior to his incarceration. However, plaintiff has failed to allege any personal participation on the part of defendants Warner, Obenland, White, and Fairchild. Furthermore, plaintiff has failed to provide any expert medical opinion evidence to support his claims against defendants Lauren and Kepler. As such evidence is required to overcome a motion for summary judgment, this failure is fatal to plaintiff's claims. Finally, no independent facts are alleged to support claims against "Jane Doe" or "John Doe" defendants as wives or husbands in the marital community.

Thus, the Court recommends that defendants' summary judgment motion as to all of plaintiff's claims be granted.

## PROCEDURAL HISTORY

Plaintiff, through his attorneys, filed this civil rights complaint on November 2, 2015 with the Superior Court of Washington for Thurston County. Dkt. 1, ¶ 2; *see also* Complaint, Dkt. 1, Attachment 2. Defendants filed a notice of removal within 30 days of service of the complaint, on February 17, 2016. Dkt. 1, ¶ 3. Defendants filed an Answer on February 22, 2016. Dkt. 7. On May 20, 2016, defendants filed a Motion for Summary Judgment. Dkt. 14; *see also* Dkts. 15-19. On June 13, 2016, plaintiff filed a Response. Dkt. 22; see also Dkts. 23-25. On June 16, 2016, defendants filed a Reply. Dkt. 26; *see also* Dkt. 27.

## BACKGROUND

Plaintiff, John Kelly Reynolds, at all times relevant, was an inmate at the Twin Rivers Unit ("TRU") of the Monroe Correctional Complex ("MCC"). Complaint, Dkt. 1, Attachment 2, ¶ 1.3 (hereinafter "Complaint"). Plaintiff contends that he was severly injured in a fall in June, 2011, prior to his incarceration. *Id*. at ¶ 3.2. Plaintiff received initial emergency treatment at

Providence Regional Medical Hospital in Everett, Washington and an MRI and X-ray allegedly revealed fractures, disc herniation and spinal cord contusion in the neck and upper middle back. *Id.* at ¶ 3.3. On or about July 30, 2012, plaintiff was incarcerated in the MCC, TRU, after being convicted and sentenced for first degree robbery. *Id.* at ¶ 3.4.

Plaintiff alleges that while incarcerated at MCC he "was in constant pain and contacted the Care Review Committee ['CRC'] shortly after being incarcerated to request further diagnostics and neurosurgery consultation and corrective treatment beyond the palliative care with opoids that he received to date from defendants." *Id.* at ¶ 3.5. The CRC denied his request on November 21, 2012. *Id.*

Plaintiff allegedly sent a kite to Dr. Bider on December 30, 2012 indicating that he had "a broken back," and was suffering from worsening and serious constant pain. *Id* at ¶ 3.6. Plaintiff indicated in this kite that he had seen his provider (referencing defendant PA/ARNP Mary Kepler), but that they were "not communicating." *Id.* Although plaintiff reportedly requested to be seen by Dr. Bider, there was no response. *Id*. Dr. Bider is not a named defendant in this action.

Plaintiff alleges that he subsequently "made several requests to the CRC for diagnostics and a neurosurgery consultation as his neck pain and upper back pain continue to get worse." *Id.* According to plaintiff's complaint, the CRC "continued to deny plaintiff's requests for a diagnostic examination and neurosurgery consultation [and that] plaintiff's only 'treatment' was the provision of palliative medication, which has little or no effect or at times makes his pain worse." *Id.*

Plaintiff indicates that he appealed to level II, to defendant Daniel White ("defendant White"), the superintendent of TRU, of the CRC's denial. *Id.* at ¶ 3.7. Defendant White allegedly denied plaintiff's appeal on December 1, 2014, and stated that the CRC's decision had been

1  reviewed by Facility Medical Director Dr. Lauren ("defendant Lauren"). *Id.* Plaintiff indicates in

2  his complaint that the "stated basis of Superintendent White's denial of the appeal is that there

3  was no evidence of a 'focal neurological deficit' so that a consult is not helpful." *Id.* at ¶ 3.8.

4  Plaintiff alleges that he "continues to suffer on a daily ongoing basis, physically, mentally,

5  emotionally." *Id.* at ¶ 3.9.

6      In plaintiff's cause of action for negligence, plaintiff alleges that defendants breached their

7  duty to provide reasonable medical care "by failing to provide diagnostic examinations and a

8  neurological consultation for plaintiff, given his medical condition, and then following up with

9  treatment based on the diagnostic examination and neurological consultation results." *Id.* at ¶¶

10  4.3-4.4. In his cause of action for medical malpractice, plaintiff additionally alleges that defendant

11  "DOC through its agents and employees, Dr. Lauren and Mary Kepler, ARNP failed to follow the

12  accepted standard of care for a healthcare provider, in that they failed to exercise that degree of

13  care, skill, and learning expected of a reasonably prudent healthcare provider at all relevant times

14  in the class or profession in which they respectively belong." *Id.* at ¶ 5.3. Plaintiff contends that

15  defendant DOC was responsible for the actions of its agents and employees under the theory of

16  respondeat superior. *Id.* at ¶ 6.2.

17      Plaintiff alleges a third cause of action for civil rights violation and that defendants,

18  allegedly "with deliberate indifference, have failed and are failing, despite their awareness of

19  plaintiff's medical condition, to conduct the diagnostic evaluation of plaintiff's condition, and/or

20  have failed, and are failing, to provide him with a neurological consultation and neurological

21  evaluation." *Id.* at ¶ 7.3. He alleges that as a proximate result of this deliberate indifference,

22  "plaintiff has suffered and continues to suffer excruciating physical pain, and severe mental

23  anguish and emotional distress, and may require additional medical treatment in the future due to

24

his currently untreated condition." *Id.* at ¶ 7.4. Plaintiff contends that this alleged deliberate indifference "constitutes a violation of his Eighth Amendment right to not be subjected to cruel and unusual punishment, and also is a violation of his right to the due process and equal protection guarantees of the Fourteenth Amendment." *Id.* at ¶ 7.5. Plaintiff indicates that he has suffered general damages and "will likely incur the need for future medical treatment and medical expenses, as well as future mental anguish, emotional distress, and pain and suffering in an amount to be proven at trial." *Id.* at ¶¶ 8.1-8.2. Plaintiff seeks general and future damages, attorney fees and costs, and pre-judgment interest. *Id.* at p. 13.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine issue of fact for trial if the record, taken as a whole, could lead a rational trier of fact to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also T. W. Elec. Service Inc. v. Pacific Electrical Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party is entitled to judgment as a matter of law if the nonmoving party fails to make a sufficient showing on an essential element of a claim on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1985); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden").

In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its

contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp,* 475 U.S. 574, 586 n. 11 (1986). In short, there is no "genuine issue as to material fact," if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Grimes v. City and Country of San Francisco*, 951 F.2d 236, 239 (9th Cir. 1991) (*citing Celotex*, 477 U.S. at 322). With these standards in mind, it is important to note that plaintiff bears the burden of proof at trial over the issues raised in this motion, *e.g.,* whether or not defendants acted with deliberate indifference or failed to follow the accepted standard of care for a healthcare provider. *See Grimes,* 951 F.2d at 239.

When presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255 (*citing Adickes v. S.H. Dress & Co.*, 398 U.S. 144, 158-59 (1970)). Conclusory, nonspecific statements in affidavits are not sufficient; and, the court will not presume "missing facts". *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990). In addition, weighing of evidence and drawing legitimate inferences from facts are jury functions, and not the function of the court. *See United Steel Workers of America v. Phelps Dodge Corps.*, 865 F.2d 1539, 1542 (9th Cir. 1989).

## DISCUSSION

### I.    Defendants Warner, Obenland, White, Fairchild and "Jane Does" Warner, Obenland, White, and Fairchild

#### A.  Civil Rights Causes of Action pursuant to 42 U.S.C. § 1983

##### i.  Personal Participation

Here, defendants Warner, Obenland, White, and Fairchild contend that plaintiff has not alleged any facts demonstrating any personal participation. Plaintiff, in his response, does not

dispute this contention and does not offer any further evidence or allegations suggesting personal participation by these defendants.

In order to state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law and (2) his conduct must have deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Paratt v. Taylor*, 451 U.S. 527 (1981). A third element of causation is implicit in the second element. *See Mt. Healthy City School Dist. Bd. Of Educ. v. Doyle*, 429 U.S. 274, 286-87 (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert denied*, 449 U.S. 875 (1980).

With respect to causation, in order to state a claim against a defendant under 42 U.S.C. § 1983, a plaintiff must plead facts that sufficiently allege that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation. *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988); *see also Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a

1    causal connection between each defendant's actions and the harm allegedly suffered by plaintiff.

2    *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Rizzo*, 423 U.S. at 371.

3        In plaintiff's response to defendants' motion for summary judgment, plaintiff does not

4    supplement his complaint with any evidence that addresses how any of these defendants

5    personally acted to violate plaintiff's constitutional rights. *See* Dkt. 22. Instead, plaintiff's

6    response focuses on defendants Lauren and Kepler. *See id.*; *see also infra*, section II.  In sum,

7    plaintiff's allegations in his complaint fail to show that defendants Warner, Obenland, White, and

8    Fairchild participated in or directed the violations, or knew of the violations and failed to act to

9    prevent them. *See Johnson*, 588 F.2d at 743; *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir. 1989).

10   Without more, plaintiff's allegations are not sufficient to establish personal participation of these

11   defendants.

12              **ii.  Supervisory Liability**

13        In his complaint, plaintiff makes general allegations potentially suggesting that these

14   defendants are liable due to their participation in the grievance process and/or their supervisory

15   positions.

16        With respect to their supervisory liability, plaintiff provides each defendant's position and

17   their alleged duties or roles at the prison facility. Dkt. 1, Attachment 2. For example, plaintiff

18   indicates that "Michael Obenland was the superintendent of the [MCC] and at all times relevant

19   Daniel White was the superintendent of the [TRU]." *Id.* at ¶ 1.5. Plaintiff also indicates that these

20   defendants "are believed to have been responsible for staffing of the [MCC] and its TRU as well

21   as determining the utilization of DOC resources for the reasonable assurance of inmate medical

22   care at the [MCC] and [TRU]." *Id.* Similarly, plaintiff indicates that "Fred Warner was the

23   Secretary of the [DOC], and, as such, the Department's Executive [who] was responsible for the

24

1    work assignments, hiring, firing, training, discipline, and supervision of offenders incarcerated by

2    the DOC, as well as the implementation of the policies and procedures of the DOC." *Id.* at ¶ 1.4.

3    Finally, plaintiff indicates that "Matthew Fairchild was the grievance program coordinator, and,

4    as such, responsible for ensuring that inmates received due process for their grievances in

5    conformance with the internal regulations governing the process." *Id.* at ¶ 1.7

6         Supervisory personnel are generally not liable under § 1983 for the actions of their

7    employees under a theory of respondeat superior and, therefore, a plaintiff must allege some facts

8    that would support a claim that a supervisory defendant either personally participated in the

9    alleged deprivation of constitutional rights, knew of the violations and failed to act to prevent

10   them, or promulgated or implemented a deficient policy that "'itself is a repudiation of

11   constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*,

12   885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045

13   (9th Cir. 1989).

14        Plaintiff has not alleged any facts demonstrating that these defendants are liable under any

15   of these theories and plaintiff did not attempt to correct these deficiencies when responding to

16   defendants' motion for summary judgment.

17

18         **iii.  Liability due to Participation in the Grievance Process**

19        The grievance process is an internal procedure for prisons to handle inmate complaints but

20   inmates are not constitutionally entitled to a grievance process. *Mann v. Adams,* 855 F.2d 639,

21   640 (9th Cir.1988), *cert. denied,* 488 U.S. 898 (1988). Similarily, an inmate has no

22   constitutionally protected right to a specific grievance procedure.  *See Ramirez v. Galaza*, 334

23   F.3d 850, 860 (9th Cir. 2003) (citations omitted). Denial of a grievance, by itself, without any

24

connection to the alleged violation of the constitutional rights, does not establish personal participation. *See Gallagher v. Shelton,* 587 F.3d 1063, 1069 (10th Cir. 2009); *see also Townsend v. Munden*, 2011 WL 666373, at *3 (W.D. Wash. Feb. 14, 2011); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (violations of a grievance procedure do not give rise to a claim under § 1983); *Wright v. Shapirshteyn,* 2009 WL 361951, at *3 (E.D.Cal., Feb.12, 2009) (noting that "where a defendant's only involvement in the allegedly unconstitutional conduct is the denial of administrative grievances, the failure to intervene on a prisoner's behalf to remedy alleged unconstitutional behavior does not amount to active unconstitutional behavior for purposes of § 1983").

Therefore, although plaintiff has suggested that the basis of his claim against these named defendants is based on their responsibility for the grievance process, there is no basis in law for such liability.  Therefore, the Court recommends granting defendants' motion for summary judgment as to these defendants, and dismissing all federal claims against defendants Warner, Obenland, White, and Fairchild.

### B.  State Law Claims

Plaintiff also alleges state law claims of negligence and medical malpractice. As noted by defendants, although plaintiff "styles these as two separate causes of action, as his complaint makes clear, his negligence claim is premised solely upon defendants' 'duty to provide reasonable medical care to plaintiff'" Dkt. 14, pp. 14-15 (citing Complaint at p. 8; *Branom v. State*, 94 Wash. App. 964, 968, 974 P.2d 335 (1999) ("whenever an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by RCW 7.70")); *see also* Complaint,

1  Dkt. 1, Attachment 2 at ¶¶ 4.1-4.6. Plaintiff does not refute this contention by defendants. *See*

2  Dkt. 22.

3       In addition, defendants indicate in a footnote that because "it is undisputed that defendants

4  Warner, Obenland, White, and Fairchild are not medical professionals, or that they had no part in

5  the CRC's decision making process, plaintiff's medical malpractice claims presumably do not

6  encompass them." Dkt. 14, p. 14 n.3. Plaintiff, in his response, does not refute this presumption of

7  defendants. *See* Dkt. 22. In addition, the Court notes that plaintiff has failed to allege any facts

8  that would support such a claim against these defendants.

9       Therefore, defendants' motion for summary judgment as to all state law claims against

10 these defendants also should be granted. As defendants' motion for summary judgment as to all

11 claims against these defendants should be granted, summary judgment also should be granted as

12 to any and all claims against "Jane Doe" spouses of these defendants regarding the marital

13 community, as there are no independent factual allegations regarding these "Jane Doe" spouses.

14

15     **II.    Defendant Lauren and defendant Mary Kepler, ARNP ("defendant Kepler")**

       **A.  Constitutional Violations Pursuant to § 1983**

16         **i.   Eighth Amendment**

17

18     To establish a constitutional violation pursuant to the Eighth Amendment due to

19 inadequate medical care, a plaintiff must show "deliberate indifference" by prison officials to a

20 "serious medical need." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   For an inmate to state a

21 claim under § 1983 for medical mistreatment or denial of medical care, the prisoner must allege

22 "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical

23 needs." *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Estelle*, 429

24

U.S. at 106.  Such conduct is actionable under 42 U.S.C. § 1983.  *See, e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *reversed on other grounds, WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson*, 503 U.S. at 9.

In a case alleging an Eighth Amendment violation, "the appropriate inquiry when an inmate alleges that prison officials failed to attend to serious medical needs is whether the officials exhibited 'deliberate indifference.'" *Hudson v. McMillian*, 503 U.S. 1, 5-6, 112 S. Ct. 995, 998 (1992). To establish deliberate indifference, a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *See McGuckin*, *supra*, 974 F.2d at 1060; *Estelle*, *supra*, 429 U.S. at 104.   "Such indifference may be manifested in two ways. It may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

A determination of deliberate indifference involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992) *overruled on other grounds by WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).  First, a "serious medical need" exists if the failure to treat a prisoner's condition would result in further significant injury or the unnecessary and wanton infliction of pain contrary to contemporary standards of decency. *Helling v. McKinney*, 509 U.S. 25, 32-35; *McGuckin*, 954 F.2d at 1059.  "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain are examples of indications that a prisoner has a 'serious' need for medical treatment." *McGuckin*, 974 F.2d at 1059-60.

Second, the indifference to medical needs must be substantial; a constitutional violation is not established by negligence or "an inadvertent failure to provide adequate medical care." *Estelle*, 429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988). Prison officials violate their obligation by "intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. at 104–05. A difference of opinion between an inmate and medical authorities regarding proper medical treatment does not give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981).

Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). According to the Supreme Court, an official can be found liable pursuant to the Eighth Amendment if "the official knows of and disregards an excessive risk to inmate health or safety  .  .  .  ." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's allegations are insufficient to survive summary judgment. Rather, the record shows that plaintiff's condition was monitored, as plaintiff "has been seen for regular checkups at MCC's medical clinic twenty times since his reincarceration on June 30, 2012." Dkt. 17, Declaration of Kenneth Lauren, M.D., ¶ 3. Defendant Lauren indicated that in his capacity as MCC's facility medical director, he is familiar with plaintiff, plaintiff's medical records, and plaintiff's medical condition. *Id*. In his declaration, defendant Lauren indicates that on November 13, 2012, defendant Kepler saw plaintiff at MCC. *Id.* at ¶ 4. According to defendant Lauren, at "the November 13, 2012 visit, plaintiff was also noted to be able to perform his activities of daily living, getting to the main line and walking in the yard for exercise." *Id*. Nevertheless, "x-rays

1    were ordered to rule out any acute injury process." *Id.* The contemporaneous chart note reflects

2    these facts. *See id*. at Exhibit A. In his declaration, defendant Lauren indicates that other than

3    "some degenerative narrowing of the C6-C7 disk space, which is very common at plaintiff's age,"

4    the findings from plaintiff's x-rays "were completely normal and showed no signs of acute

5    fracture, subluxation, erosion, or sclerosis." *Id.* at ¶ 5. Plaintiff's x-ray results attached to

6    defendant Lauren's declaration substantiates that defendants had objective and opinion evidence

7    in plaintiff's medical record suggesting that the only issue with plaintiff's back was some

8    narrowing of the C6-7 disc space. *Id.* at Exibit B ("NORMAL LUMBAR SPINE" opined by Dr.

9    Neil Schneider MD), Exhibit C ("NORMAL THORACIC SPINE" opined by Dr. Neil Schneider

10    MD), Exhibit D ("NARROWING OF THE C6-7 DISC SPACE. OTHERWISE NEGATIVE

11    CERVICAL SPINE" opined by Dr. Neil Schneider MD). This evidence is contrary to plaintiff's

12    conclusory allegation that defendants Lauren and Kepler were aware of and yet purposefully

13    ignored or failed to respond to a serious risk to his health. *See McGuckin*, *supra,* 974 F.2d at

14    1060; *Estelle*, *supra,* 429 U.S. at 104.

15       Defendant Lauren indicates in his declaration that plaintiff "returned to ARNP Kepler in

16    the MCC medical clinic two days later on November 16, 2012, demanding to know what she was

17    going to do to 'fix' his back." *Id.* at ¶ 6. At this visit, according to defendant Lauren's declaration,

18    "ARNP Kepler performed a physical examination which revealed no atrophy and no neurological

19    deficits." *Id*. ARNP Kepler counseled plaintiff regarding chronic pain and ordered serum testing

20    to rule out "metabolic complicating issues." *Id.* ARNP Kepler also agreed to submit plaintiff's

21    case to the CRC in order to seek approval of additional diagnostic imaging and neurological

22    consult. *Id.* The chart note from this date supports these facts. *See id.* at Exhibit E. for example,

23

24

1  this chart note indicates that plaintiff was able "to remove and replace shirt without pain

2  indicators." *See id.*

3        According to defendant Lauren, plaintiff's "request for neurosurgery diagnostics and

4  treatment was presented at the November 21, 2012 meeting of the CRC, where it was considered

5  by eighteen members of the panel," of which he was a member. *Id.* at ¶ 7. According to defendant

6  Lauren, the CRC determined that plaintiff's requested intervention was not medically necessary

7  based on plaintiff's "normal x-rays, lack of any neurological deficits, and existing ability to

8  perform activities of daily living." *Id.* A copy of the committee's review and decision from

9  November 21, 2012 supports these facts. *See id.*, Exhibit F.

10        In his declaration, defendant Lauren indicates that after being notified of the CRC's

11  decision, plaintiff visited ARNP Kepler again on November 27, 2012 and "requested CRC

12  consideration of opiates so he could 'do his exercises better.'" *Id.* at ¶ 8. According to defendant

13  Kepler's declaration, plaintiff's "consultation was cut short when he became argumentative,

14  forcing ARNP Kepler to summon the custody standby." *Id.* The chart note from this date supports

15  these facts. *See id.*, Exhibit G.

16        In his declaration, defendant Lauren indicates that plaintiff "continued to work in the

17  prison laundry and was seen twelve times for various health issues between November 2012 and

18  August 2014." *Id.* at ¶ 9. He further indicates in his declaration that on August 8, 2014, plaintiff

19  again saw ARNP Kepler in the clinic and demonstrated "no neurological deficits and no muscle

20  atrophy." *Id.* At this time, ARNP Kepler agreed to plaintiff's request to resubmit his request to the

21  CRC for additional imaging studies and an outside neurological consult. *Id.* Support for some of

22  these facts is found in an attached chart note from this date. *See id.* at Exhibit H.

23

24

1    According to defendant Lauren's declaration, plaintiff's "case was reviewed by the

2  twenty-five member CRC panel on August 13, 2014 as a request for a MRI and an outside

3  neurological consultation." *Id.* at ¶ 10. Defendant Lauren indicates that he was a member of that

4  panel, and that the CRC panel reviewed plaintiff's medical record and "noted he still had no

5  neurological deficits on clinical examination and was able to perform all activities of daily

6  living." *Id.* The CRC panel also noted that plaintiff "was still working out and was now

7  performing gardening work at the facility." *Id.* According to defendant Lauren's declaration, the

8  panel "also reviewed plaintiff cervical spine x-ray results from November 2012 and found them to

9  be completely benign, containing only age-appropriate degenerative changes [and] were noted to

10  be negative for fracture, dislocation, erosion, or sclerosis." *Id.* Plaintiff's request was denied as

11  the panel determined that his requested medical intervention "was not medically necessary and,

12  therefore, did not meet the criteria of a level I or level II medical condition under the OHP

13  [Offender Health Plan]." *Id.* The panel recommended that plaintiff "continue with conservative

14  management of his condition, [including] pain control and regular checkups as needed." *Id.*

15    In his declaration, defendant Lauren indicates that it is his "medical opinion that on a more

16  probable than not basis, any limitations plaintiff may presently have as a result of his chronic back

17  problems do not and will not limit the activities of plaintiff's daily life and do not result in

18  intractable pain." *Id.* at ¶ 11. He also opined that "plaintiff's condition has been adequately

19  managed with conservative treatment." *Id.* Defendant Lauren supported this opinion by noting

20  that plaintiff "is able to work with minimal limitations and has pursued recreational opportunities

21  including working out, working in the laundry, and gardening." *Id.* Defendant Lauren further

22  indicates his opinion that plaintiff's requested consultation "was not and is not medically

23  necessary," and that the conservative treatment provided to plaintiff "met the applicable standard

24

1  of care for treating plaintiff's condition as surgical intervention is not indicated in every case for

2  this medical condition." *Id.*

3        The evidence from the Lauren declaration discussed herein demonstrates that plaintiff was

4  examined on multiple occasions, was provided x-rays, and that his pain was being managed. It

5  also supports defendants' contention that they were not aware of and purposely ignoring or failing

6  to respond to a serious risk to his health. *See McGuckin*, *supra,* 974 F.2d at 1060; *Estelle*, *supra,*

7  429 U.S. at 104. Defendant Lauren's declaration and the attached exhibits substantiates a basis for

8  a contemporaneous belief by defendants that plaintiff's x-rays were mostly normal, he exhibited

9  no atrophy, and he was able to engage in daily activities, work, and recreation.

10        Plaintiff offers no evidence to the contrary other than his own conclusory opinion.

11  However, plaintiff's attempts to self-diagnose are not admissible as medical opinion evidence

12  because he is not a medical provider and he has not put forth any admissible evidence supporting

13  his arguments. A difference of opinion between an inmate and medical authorities regarding

14  proper medical treatment does not give rise to a § 1983 claim.  *Franklin*, 662 F.2d at 1344.

15        In order to survive a motion for summary judgment on an Eighth Amendment claim,

16  plaintiff must tender evidence of specific facts in the form of affidavits, and/or admissible

17  discovery material in support of his contention that a dispute exists regarding plaintiff's claim that

18  defendants knew of and disregarded "an excessive risk to inmate health or safety . . . ." *Farmer*,

19  511 U.S. at 837; *Matsushita Elec. Indus. Co.,* 475 U.S. at 586 n.11; Fed. R. Civ. P. 56(c). In

20  contrast, plaintiff admits that "at this time he does not have an expert witness to opine on the

21  standard of care in this case." Dkt. 22, p. 8.

22        Although plaintiff requests "additional time to obtain an expert witness under Fed. R. Civ.

23  P. 56(d)," plaintiff has not demonstrated good cause for granting such an extension, as is required

24

by Fed. R. Civ P. 6(b)(1). Even if the Court were to grant this request, at most, plaintiff would present a difference of opinion. *Id.* However, deliberate indifference requires more than a difference of opinion and requires that defendants act with a culpable state of mind. *See Franklin*, 662 F.2d at 1344. Furthermore, plaintiff's request does not meet the standard.

As argued by defendants, in order to obtain relief pursuant to Fed. R. Civ. P. 56(d), the non-moving party must show (1) that he has "set forth in affidavit form the specific facts [he] hope[s] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." *California ex rel. California Dep't of Toxic Substances Control v. Campbell,* 138 F.3d 772, 779 (9th Cir. 1998). As argued by defendant, plaintiff's submitted declaration from his counsel does not set forth the specific facts he hopes to elicit from further discovery and also does not set forth that the facts sought exist. *See id.;* Dkt. 24. As noted by defendants, the declaration submitted "does not even identify an expert from whom the requisite opinion is expected or from whom it has been sought." Dkt. 26, p. 5. Also as noted by defendants, it "provides no basis upon which to believe an expert willing to render an opinion favorable to the plaintiff even exists." *Id*. Furthermore, the Court notes that plaintiff provides no explanation as to why he has not yet obtained an opinion on the standard of care from an outside expert. *See* Dkt. 24. As argued by defendants, Fed. R. Civ. P. 56(d) "provides additional time to conduct discovery when the facts necessary to resist a summary judgment motion are unavailable to the non-moving party: It is not an escape clause for parties that know the essential facts but have nonetheless failed to obtain the expert testimony necessary to support their claims." Dkt. 26, p. 5 (internal citation omitted).

Fed. R. Civ. P. 56(d) requires that a nonmovant "show[] by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . . ." Fed. R. Civ.

1   P. 56(d). Plaintiff has not specified reasons for his failure to obtain the necessary expert medical

2   opinion, and instead, implies that he simply has not yet gotten around to it. *See* Dkt. 24. This is

3   insufficient. The Court concludes that plaintiff's lack of diligence does not merit the granting of a

4   continuance pursuant to Rule 56 (d). *See* Fed. R. Civ. P. 56(d); *see also California ex rel.*

5   *California Dep't of Toxic Substances Control,* 138 F.3d at 779.

6       Because plaintiff has not disputed adequately that defendants Lauren and Kepler did not

7   act with any subjective intent of deliberate indifference or that his medical treatment was the

8   result of anything more than a difference in opinion, the Court concludes that plaintiff has failed

9   to go beyond the pleadings and identify facts that show that a genuine issue for trial exists. *See*

10  *Celotex,* 477 U.S. at 323-24 (1986); *Anderson,* 477 U.S. at 248. Accordingly, defendants Lauren

11  and Kepler are entitled to summary judgment in their favor on the Eighth Amendment claim.

12                          **ii.   Due Process**

13      Plaintiff alleges that defendants Lauren and Kepler "have been grossly incompetent in

14  diagnosing and treating plaintiff's intractable pain, by simply providing palliative analgesic

15  medication without adequately monitoring and treating the pain in a manner consistent with the

16  Offender Health Plan." Dkt. 22, pp. 6-7.

17      Plaintiff acknowledges that the Offender Health Plan ("OHP") "defines medically

18  necessary care as including several criteria, including the following: 1) essential to the

19  preservation of life or limb; 2) prevent significant deterioration of activities of daily living; 3)

20  reduces intractable pain." Dkt. 22, p. 2 (citing Declaration of Hammond, M. D., Exhibit A, pp.

21  15-16). There have been no allegations regarding a need for further medical care to preserve life

22  or limb; therefore plaintiff appears to be alleging that defendants Lauren and Kepler failed to

23

24

1  provide care that was necessary to prevent significant deterioration of activities of daily living or

2  to reduce intractable pain.

3        As noted already, *see supra*, Section I.A.ii, in his declaration, defendant Lauren indicated

4  that it is his "medical opinion that on a more probable than not basis, any limitations plaintiff may

5  presently have as a result of his chronic back problems do not and will not limit the activities of

6  plaintiff's daily life and do not result in intractable pain." *Id.* at ¶ 11. Similarly, the chief medical

7  officer of the DOC, Dr. G. Stephen Hammond, M.D., indicated in his declaration that he reviewed

8  plaintiff's medical records and the records of the CRC's consideration of plaintiff's requests. Dkt.

9  16, ¶ 11. Dr. Hammond indicates that it is his "medical opinion, on a more probable than not

10  basis, that any limitations plaintiff may presently have as a result of his chronic back problems do

11  not and will not limit the plaintiff's ability to perform activities of daily living as defined by the

12  OHP and do not result in a intractable pain as defined by the OHP." *Id.*

13        Although plaintiff provides his own conclusory allegations to the contrary, plaintiff's

14  allegations and attempts to self-diagnose are not admissible as medical opinion evidence because

15  but he is not a medical provider and he has not put forth any admissible evidence supporting his

16  arguments. Plaintiff has failed to demonstrate that a question of material fact exists as to whether

17  or not defendants complied with the standard of care required by the OHP.

18        For the reasons stated, the Court concludes that plaintiff has failed to show that a genuine

19  issue for trial exists. *See Celotex,* 477 U.S. at 323-24 (1986); *Anderson,* 477 U.S. at 248.

20  Accordingly, defendants Lauren and Kepler are entitled to summary judgment in their favor on

21  the Due Process claim.

22  //

23  //

24

### iii.   Equal Protection

Although plaintiff mentions the words "Equal Protection" in his complaint, he does not do so in his response. Dkt. 1, Attachment 2, ¶ 7.5, Dkt. 22. Perhaps more importantly, plaintiff has not alleged any facts supporting an Equal Protection claim. Therefore, to the extent that plaintiff intended to bring an Equal Protection claim, such claim is wholly unsupported and defendants' motion for summary judgment on any such claim should be granted.

For the reason stated, the Court recommends that defendants' motion for summary judgment as to defendants Kepler and Lauren be granted regarding all federal claims. As defendants' motion for summary judgment as to all federal claims against these defendants should be granted, summary judgment also should be granted as to any and all federal claims against "Jane Doe" and "John Doe" spouses of these defendants regarding the marital community, as there are no independent factual allegations regarding these "Jane Doe" and "John Doe" spouses.

### B.  State Law Claims

Plaintiff also alleges state law claims of negligence and medical malpractice. As noted by defendants, although plaintiff "styles these as two separate causes of action, as his complaint makes clear, his negligence claim is premised solely upon defendants' 'duty to provide reasonable medical care to plaintiff'" Dkt. 14, pp. 14-15 (citing Complaint at p. 8; *Branom v. State*, 94 Wash. App. 964, 968 974 P.2d 335 (1999) ("whenever an injury occurs as a result of health care, the action for damages for that injury is governed exclusively by RCW 7.70")); *see also* Complaint, Dkt. 1, Attachment 2 at ¶¶ 4.1-4.6. Plaintiff does not refute this contention by defendants. *See* Dkt. 22. Therefore, plaintiff's state law claim consists of a medical malpractice claim. *See Branom*, 94 Wash. App. at 968 (citing RCW 7.70).

1    In addition, in order to sustain a claim for medical malpractice, plaintiff must prove that

2  defendant health care provider:

3       [F]ailed to exercise that degree of care, skill and learning expected of a
        reasonably prudent health care provider at the time in the profession or class to
4       which he or she belongs, in the State of Washington, acting in the same or
        similar circumstances; [and that] [s]uch failure was a proximate cause of the
5       injury complained of.

6  RCW 7.70.040(1) and (2).

7       In order to establish both the standard of care and to prove causation in a medical

8  malpractice action, in most cases, expert medical testimony is required. *Guile v. Ballard Cmty.*

9  *Hosp.*, 70 Wash. App. 18, 25, 851 P.2d 689 (1993). Therefore, healthcare providers are entitled to

10  summary judgment once they demonstrate the nonmovant's lack of competent expert testimony

11  demonstrating the standard of care and causation. *Id.*, *Moringa v. Vue*, 85 Wash. App. 822, 832,

12  935 P.2d 637 (1997).

13       As already discussed, and as admitted by plaintiff, plaintiff "acknowledges that at this

14  time he does not have an expert witness to opine on the standard of care in this case." Dkt. 22, p.

15  8.  The Court also has discussed how plaintiff has not sufficiently explained why he should be

16  granted additional time to obtain an expert witness pursuant to Fed. R. Civ. P. 56 (d). Therefore,

17  for the reasons already elucidated, the Court recommends that defendants' motion for summary

18  judgment regarding plaintiff's state law claims against defendants Lauren and Kepler be granted

19  as to all state law claims. As defendants' motion for summary judgment as to all state law claims

20  against these defendants should be granted, summary judgment also should be granted as to any

21  and all claims against "Jane Doe" and "John Doe" spouses of these defendants regarding the

22  marital community, as there are no independent factual allegations regarding these "Jane Doe"

23  and "John Doe" spouses.

24

1

2

**III.      The Washington Department of Corrections**

3

**A.  Federal Claims pursuant to 42 U.S.C. § 1983**

4          In order to recover pursuant to 42 U.S.C. § 1983, a plaintiff must prove that: (l) the

5   conduct complained of was committed by a person acting under color of state law and that (2) the

6   conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws

7   of the United States.  *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*,

8   *Daniels v. Williams*, 474 U.S. 327 (1986).  Although a plaintiff can maintain a § 1983 claim

9   against a person acting under color of state law, *see Parratt*, *supra*, 451 U.S. at 535, neither a

10   state, nor a state agency that is an arm of the state, is a person for purposes of § 1983. *See Howlett*

11   *v. Rose*, 496 U.S. 356, 365 (1990) (*citing Will v. Michigan Dept. of State Police*, 491 U.S. 58

12   (1989)); *Will, supra*, 491 U.S. at 66-70. This rationale applies to state agencies such as the

13   Washington Department of Corrections ("WDOC"), *see Alabama v. Pugh*, 438 U.S. 781, 782

14   (1978) (per curiam); *Allee v. Or. Dep't. of Corr.*, 315 Fed. Appx. 610, 611 (9th Cir. 2009)

15   (unpublished memorandum opinion) (*citing Will, supra*, 491 U.S. at 66). Therefore, the Court

16   concludes that defendants' Motion for Summary Judgment as to defendant WDOC should be

17   granted as to plaintiff's § 1983 claims.

18

**B.  State Law Claims**

19

20          Plaintiff also alleges state law claims of negligence and medical malpractice. As noted by

21   defendants, although plaintiff "styles these as two separate causes of action, as his complaint

22   makes clear, his negligence claim is premised solely upon defendants' 'duty to provide reasonable

23   medical care to plaintiff'" Dkt. 14, pp. 14-15 (citing Complaint at p. 8; *Branom v. State*, 94 Wash.

24   App. 964, 968 974 P.2d 335 (1999) ("whenever an injury occurs as a result of health care, the

action for damages for that injury is governed exclusively by RCW 7.70")); *see also* Complaint, Dkt. 1, Attachment 2 at ¶¶ 4.1-4.6. Plaintiff does not refute this contention by defendants. *See* Dkt. 22.

In addition, although plaintiff alleges a cause of action against WDOC for the actions of its agents and employees, defendants Lauren and Kepler, under the theory of respondeat superior, (*see id.* at ¶ 6.2.), the Court has concluded that all of plaintiff's claims against defendants Lauren and Kepler should be dismissed, *see supra,* section II. Therefore, defendants' Motion for Summary Judgment as to defendant WDOC should be granted as to all claims.

### IV.    Qualified Immunity

Defendants contend that they are entitled to qualified immunity, noting that prison officials are shielded "from liability 'for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known'" (*see* Dkt. 14, pp. 13-14 (*citing Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982))). Plaintiff appears to contest this assertion only as to defendants Lauren and Kepler. *See* Dkt. 22, pp. 6-7. Plaintiff contends that defendants Lauren and Kepler are deprived of qualified immunity because they "have been grossly incompetent in diagnosing and treating plaintiff's intractable pain, by simply providing palliative analgesic medication without adequately monitoring and treating pain in a manner consistent with the [OHP], and allowing the condition which has not even been adequately diagnosed, to continue." *Id.* at p. 7.

According to the Supreme Court, "government officials performing discretionary functions [are entitled to] a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638 (1987) (citations omitted).

1   The first step in the qualified immunity analysis is whether or not the facts "[t]aken in the light

2   most favorable to the party asserting the injury … show [that] the [defendants'] conduct violated a

3   constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001) (citation omitted). The second

4   step is whether the right was clearly established at the time of the alleged violation. *Id.*

5          In the matter herein, it is uncontested that plaintiff was seen by medical personnel

6   regularly, and was provided x-rays, range of motion testing and medication. Therefore, the facts,

7   even when taken in the light most favorable to plaintiff, do not demonstrate that any of the

8   defendants' conduct violated any clearly established constitutional right. Therefore, defendants

9   are entitled to qualified immunity.

10  **V.      Denial of any Request for Leave to Amend the Complaint**

11         For the reasons stated throughout this R&R, the Court concludes that any requests by

12  plaintiff for leave to amend the complaint in order to state a claim against defendants in their

13  individual capacities should be denied. The Court finds persuasive defendants' argument that any

14  such amendment would be futile. Dkt. 26, p. 6 (citing *Saul v. United States*, 928 F.2d 829, 843

15  (9th Cir. 1991).

16

17  **VI.     Alternative Remand of State Law Claims to State Court**

18         In the alternative, if the Court concludes that defendants' motion for summary judgment

19  as to all federal claims should be granted, but declines to adopt this R&R regarding granting

20  summary judgment as to the remaining state court claims, the Court recommends that this Court

21  not exercise supplemental jurisdiction over plaintiff's state claims.

22         If all federal claims are dismissed and original jurisdiction is gone, the Court must decide

23  if it will exercise supplemental jurisdiction over plaintiff's state claims.  *See generally Thurmond*

24  *v. County of Wayne*, 447 Fed. Appx. 643, 651-52 (6th Cir. 2011) (remanding, rather than

1    dismissing state claims without prejudice, if the action was removed from state court); *see also* 28

2    U.S.C. § 1367(c)(1) and (3) (giving the courts discretion to decline to exercise supplemental

3    jurisdiction when original jurisdiction claims have been dismissed or the issue involves novel or

4    complex issues of state law). Pursuant to 28 U.S.C. § 1367(c)(3), if a federal district court has

5    dismissed all claims over which it has original jurisdiction, it may, in its discretion, decline to

6    exercise supplemental jurisdiction over a state claim brought in the same action. 28 U.S.C. §

7    1367(c) (3); *see also* 28 U.S.C. § 1367(a). In addition to the option of dismissing state claims

8    without prejudice, the "discretion to remand enables district courts to deal with cases involving

9    pendent claims in the manner that best serves the principles of economy, convenience, fairness,

10    and comity which underlie the pendent jurisdiction doctrine." *Carnegie–Mellon Univ. v. Cohill*,

11    484 U.S. 343, 357 (1988).

12      Although courts are not required to dismiss or remand supplemental state law claims, "in

13    the usual case in which all federal-law claims are eliminated before trial, the balance of factors to

14    be considered under the pendent jurisdiction doctrine—judicial economy, fairness, convenience,

15    and comity—will point toward declining to exercise jurisdiction over the remaining state-law

16    claims." *Id.* at 350 n.7.  Declining to exercise jurisdiction may be justified if the case is at an early

17    stage.  *Id*. at 350 (citing *Mine Workers v. Gibbs*, 383 U.S. 715, 726-27(1966)).

18      Plaintiff, through his attorneys, originally filed the underlying complaint herein on

19    November 2, 2015 with the Superior Court of Washington for Thurston County. Dkt. 1, ¶ 2. In

20    addition, in this matter herein, discovery is not due to be completed until February 15, 2017, and

21    dispositive motions are not due to be filed until March 15, 2017. *See* Revised Pretrial Scheduling

22    Order, Dkt. 11. Therefore, this matter still is in a relatively early stage of the proceedings. *See id*.

23    Because the Court concludes that all of plaintiff's constitutional claims are subject to dismissal for

24

1  the reasons described above, and because the case is at a relatively early stage, if the Court

2  declines to adopt this R&R regarding plaintiff's state law claims, the Court recommends that the

3  Court decline to exercise supplemental jurisdiction over any state law claims and to remand the

4  case to state court. *Carnegie–Mellon Univ.*, 484 U.S. at 350 n.7.

5                                    <u>**CONCLUSION**</u>

6         For the reasons stated above, the Court recommends that defendants' motion for summary

7  judgment be granted as to all defendants and as to all claims.

8         In the event that the Court adopts this R&R with respect to federal claims, but not as to

9  state claims, the Court recommends no exercise of supplemental jurisdiction over any remaining

10  state claim(s).

11         Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen

12  (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.

13  Failure to file objections will result in a waiver of those objections for purposes of *de novo* review

14  by the district judge.  *See* 28 U.S.C. § 636(b)(1)(C).  Accommodating the time limit imposed by

15  Fed. R. Civ. P. 72(b), the clerk is directed to set the matter for consideration on **August 12, 2016**,

16  as noted in the caption.

17         Dated this 18th day of July, 2016.

18

19

20                                                  J. Richard Creatura
                                                   United States Magistrate Judge

21

22

23

24